UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

QUENTIN C. WARD,

        Plaintiff,

v.                                                               Case No. 21-C-1155

NATE TAPIO, SYLVIA LONGRIE PLEESTER,
LANA DOE, AMBER DOE, MEREDITH DOE,
KELLY DOE, and JAMES GREER,

        Defendants.

## SCREENING ORDER

Plaintiff Quentin C. Ward, who is currently serving a state prison sentence at the Milwaukee Secure Detention Facility and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. The Prison Litigation Reform Act applies to this case because Ward was a prisoner when he filed his complaint. Ward paid the $402 civil case filing fee on November 1, 2021. The Court will screen his complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure

and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Ward explains that he suffers from severe chronic pain that radiates throughout his body. In 2019, it was recommended that he have back surgery, but he was released from prison before the surgery could be scheduled. Ward was reincarcerated in May 2020, about a year after his release. Ward did not pursue surgery during his release. In July 2020, Ward fell, which he asserts exacerbated his condition, causing intense pain to run down his neck into his lower back and shoulder. Ward asserts that he was examined by Defendant Nurse Practitioner Nate Tapio, who

2

prescribed an NSAID, acetaminophen, and lidocaine topical ointment. According to Ward, Tapio also offered to prescribe an antidepressant for his pain, but Ward declined, explaining to Tapio that he had been prescribed many antidepressants in the past for pain and none had been effective. Tapio also ordered physical therapy, a TENS unit, and a pain management consultation. Dkt. No. 1 at 6.

During the following months, Ward asserts that his pain began to worsen, extending down his leg and arms and causing his hands and fingers to tingle and burn. On November 10, 2020, Tapio allegedly sent Ward a memo informing him that his case had been presented to the chronic opioid committee for the approval of methadone, but the request was denied by the medical director. Instead, the committee approved an epidural steroid injection and a CT scan to be followed by a consultation with pain management. Ward was also examined by a rheumatology specialist, he received an EMG, MRI and CT scan, his test results were reviewed by more than one neurologist, and he had major surgery on his neck and back. Ward explains that he was repeatedly told that his pain would never go away, but that surgery would hopefully halt further neurological decline. Dkt. No. 1 at 8-11.

While in the hospital after surgery, Ward alleges that he was taking a low dose of oxycodone, but Tapio informed the hospital that Ward could not take an opioid at the institution. Ward alleges that Tapio's representation was false, but nonetheless he agreed to take Tramadol instead of oxycodone so he could be discharged from the hospital. Ward asserts that he confirmed when he returned to his institution that inmates are allowed to take narcotics and/or opioids for pain. Ward explains that Tramadol was not the most effective to treat his pain, but it was better than the other medications Tapio had prescribed. Nonetheless, Tapio allegedly canceled his prescription for Tramadol. According to Ward, numerous specialists have recommended that he

3

be prescribed a narcotic (Methadone, Tylenol #3, or Tramadol) or an opioid (oxycodone) for his pain, but Tapio continues to ignore their recommendations and instead persists in prescribing medications and treatments that Ward has repeatedly informed him are ineffective. Ward acknowledges that he will never be pain-free, but he desires his pain to be managed so he can perform daily activities. Dkt. No. 1 at 12-18, 22.

Ward asserts that he wrote to Defendant Sylvia Longrie Pleester, the health services manager, multiple times to complain about Tapio denying him adequate pain medication as recommended by numerous specialists. On September 13, 2021, she responded to Ward, telling him she had completed an extensive review of his medical chart and the care he had received during the prior sixteen months and had noted that he had received physical therapy, diagnostic testing (CT scan and MRI), and consultations for rheumatology, neurosurgery, and pain management. She also noted that a request for chronic opioid use was denied, but he was prescribed Pregabalin, ibuprofen, acetaminophen, and capsaicin. Ward points out that she failed to identify who denied the chronic pain opioid request. Dkt. No. 1 at 20-21. Ward seeks money damages for his pain and suffering.

## THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks: 1) "whether a plaintiff suffered from an objectively serious medical

condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

Ward's allegations that he has severe pain throughout his body are sufficient for the Court to infer that he suffers from an objectively serious medical condition. However, whether the Court can reasonably infer from his allegations that Tapio was deliberately indifferent to his condition is a closer call. According to Ward, Tapio prescribed conservative treatments such as physical therapy and a TENS unit, referred him to multiple specialists, ordered diagnostic tests such as CT scans and an MRI, and approved him for major back surgery. Contrary to Ward's characterization, Tapio's many efforts to address Ward's complaints of pain do not demonstrate deliberate indifference.

Still, Ward complains that, despite these efforts, he was in excruciating pain and he consistently informed Tapio of this. He acknowledges that he will never be pain free, but he asserts that his pain can be managed to a point that he can perform daily activities. He notes that he repeatedly informed Tapio that he had tried the many medications Tapio was prescribing and none of them worked. He also alleges that multiple specialists recommended a low dose of either a narcotic or opioid to treat his pain, but Tapio persisted in prescribing allegedly ineffective medications. Tapio even allegedly canceled Ward's prescription for Tramadol, which Ward asserts provided him with some relief. The wrinkle, of course, is that it does not appear from Ward's complaint that Tapio had the authority to approve the prescription of narcotics or opioids. According to Ward, Tapio and Pleester both informed him that a request for opioids had been denied. Although neither disclosed the name of the person who denied the request, Tapio stated that the medical director had denied the request.

It is unknown why Tapio's request that Ward be prescribed opioids was denied. Tapio explained to Ward that opioids are rarely prescribed because they pose significant dangers in the prison context, but it is not clear whether those general dangers applied to Ward. Ward explains that he continues to be in severe pain, and he alleges that he has only ever received relief from narcotics and opioids. Accordingly, the Court finds that additional development of the record is necessary before it can assess whether the medical director's refusal to prescribe narcotics demonstrates deliberate indifference to Ward's pain. The Court will add a John Doe placeholder as a Defendant. Ward can use discovery to learn the name of the medical director. Once he learns his or her name, he should file a motion to replace the John Doe placeholder with the medical director's name.

The Court will also allow Ward to proceed on a deliberate indifference claim against Tapio. Although Tapio apparently submitted a request that Ward be prescribed an opioid, it is not clear what information he included in his request. Construing Ward's allegations broadly, which the Court must at this stage, it is possible that Tapio failed to adequately communicate the severity of Ward's condition or the many specialists' recommendations for a narcotic/opioid when submitting the request to the medical director. Failing to adequately inform the medical director of Ward's condition when making the request (thus essentially guaranteeing that the request would be denied) is sufficient, at least at this stage, for Ward to proceed on a deliberate indifference claim.

The Court will not, however, allow Ward to proceed against the remaining individuals he names as Defendants. Ward names four nurses—Lana, Amber, Meredith, and Kelly—but he does not allege what they did or did not do to violate his rights. Section 1983 requires that an individual be personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). This means that a plaintiff must include allegations that connect the

6

Case 1:21-cv-01155-WCG   Filed 11/09/21   Page 6 of 10   Document 8

person he is suing to the alleged misconduct. *Id.* According to Ward's complaint, Tapio was the medical professional who was responsible for deciding how to respond to Ward's complaints. The mere fact that these nurses triaged Ward's health services requests or scheduled his appointments is not sufficient to state a claim.

Nor does Ward state a claim against Pleester, the health services manager. According to Ward, Pleester responded to his complaints and informed him that she had reviewed his records as well as the treatment he had received during the prior sixteen months. She noted the many steps Tapio had taken to diagnose Ward's condition, including referring him to specialists, ordering diagnostic tests, and ordering major back surgery. She also noted the attempts Tapio made to address Ward's pain, including ordering physical therapy, prescribing multiple medications and a TENS unit, and scheduling pain management consultations. Finally, she observed that a request for opioids had been submitted and denied. As an administrator, Pleester could defer to Tapio's decisions because it was apparent from her review that Ward was receiving near constant care and the care Tapio was providing posed no obvious and serious risk to Ward's health. *See Franklin v. Hannula*, 850 F. App'x 436, 439 (7th Cir. 2021).

Ward also fails to state a claim against James Greer, the Bureau Director of Health Services for the Wisconsin Department of Corrections. It is not clear why Ward sues Greer; he does not appear to have had any role in treating Ward. Under §1983, the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th

Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Greer's role as a supervisor, on its own, is not enough for Ward to state a claim against him.

In short, the Court finds that Ward may proceed on a deliberate indifference claim against Tapio and the John Doe medical director.

Finally, on October 13, 2021, Ward filed a motion "to venue this action in the Eastern District of Milwaukee." Dkt. No. 5. Contrary to Ward's understanding, there is no Eastern District of Milwaukee. There is only the Eastern District of Wisconsin, which contains both the Green Bay division and the Milwaukee Division. According to the 2005 "General Order Regarding Assignment of Cases to the United States District Judge Designated to Hold Court in Green Bay, Wisconsin," civil cases having the greatest nexus with designated counties close to Green Bay should be assigned to the Green Bay Division and civil cases having the greatest nexus with designated counties close to Milwaukee should be assigned to the Milwaukee Division. However, the order does not apply to prisoner civil cases, which are to be assigned randomly among the two divisions pursuant to General L. R. 3.1. *See http://www.wied.uscourts.gov* ("General Orders" and then "Assignment of Cases") (last visited November 8, 2021). Thus, this action was properly assigned to the Green Bay Division.

Ward asserts that the action should be reassigned because the events happened in Milwaukee and the people involved are located in Milwaukee, but, as noted in the General Order, the nexus of a prisoner civil rights case is insufficient on its own to require assignment to a specific division. Because Ward offers no other reason why this action should be transferred to the Milwaukee Division, the Court will deny his motion.

**IT IS THEREFORE ORDERED** that Sylvia Longrie Pleester, Lana Doe, Amber Doe, Meredith Doe, Kelly Doe, and James Greer are **DISMISSED** based on Ward's failure to state a claim against them.

The Clerk's Office is directed to add John Doe Medical Director as a Defendant.

**IT IS FURTHER ORDERED** that Ward's motion to transfer venue (Dkt. No. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Ward's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Nate Tapio.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Tapio shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>  Honorable William C. Griesbach
>  c/o Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin

125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Ward is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Ward may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 9th day of November, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge